RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0315p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

RANDY LOUIS MASSEY,
　　　　　　　　*Defendant-Appellant.*

No. 10-1335

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 09-00116-001—Paul Lewis Maloney, Chief District Judge.

Decided and Filed: December 16, 2011

Before: MARTIN and GRIFFIN, Circuit Judges; ANDERSON, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Gary W. Lanker, LAW OFFICE OF GARY W. LANKER, Memphis, Tennessee, for Appellant. Mark V. Courtade, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

S. THOMAS ANDERSON, District Judge. Randy Louis Massey entered a plea of guilty to one count of conspiracy to manufacture, possess and distribute 500 grams or more of methamphetamine. He was sentenced to a term of imprisonment of 324 months. Massey argues on appeal that the sentence was procedurally and substantively

_____
[*]The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

unreasonable. Because the district court's sentence was reasonable, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

On March 1, 2009, at 1:30 A.M., the fire departments of Comstock and Kalamazoo Township, Michigan responded to a fire in the basement of a residence on Steger Avenue in Kalamazoo. The occupants of the home were the homeowner Debra Homan ("Homan") and her boyfriend. Upon extinguishing the fire, the firefighters discovered a meth lab in the basement. According to Homan, Randy Louis Massey had offered her $100 for the use of her basement, which she assumed was related to meth production. Around midnight on February 28, 2009, Massey arrived at Homan's residence with Matthew Jones ("Jones"), and the two men immediately went to the basement. Having earlier observed Jones cutting up batteries in the basement, Homan later heard a loud yell and discovered a large fire in her basement. Jones's pants and the back of his arms were on fire. When Homan called 911, Massey and Jones fled the residence. Massey and Jones were picked up by another accomplice, Phillip Parrish ("Parrish"), and taken to separate hotels in the Kalamazoo area.

Massey rejoined Jones, Parrish and another accomplice, Ashley Branch ("Branch"), later on March 1, 2009, at the Days Inn in Battle Creek, Michigan, to continue "cooking" meth. Massey was smoking a cigarette during the "filtering" process, which caused an explosion and fire in the motel room. Massey, Parrish and Branch caught fire and fled the motel with Branch sustaining severe burns. At approximately 11:20 P.M., firefighters responded to the fire in Room 215 of the Days Inn.

**B.        Procedural Background**

On April 15, 2009, Massey was indicted on three counts relating to the manufacture or attempted manufacture of methamphetamine. Count One charged Massey with conspiring with Homan, Jones, Parrish, and Branch to manufacture, possess and distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(viii). Counts Two and Three charged Massey and the others with attempting to manufacture 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B)(viii). Massey entered into a plea agreement, and on October 26, 2009, the district court accepted Massey's guilty plea as to Count One. As part of the agreement, the government stated that it would "decide whether to file a motion for departure pursuant to U.S.S.G. § 5K1.1 and/or Rule 35(b) of the Federal Rules of Criminal Procedure."

In advance of Massey's sentencing, the probation officer prepared a presentence report, calculating Massey's total offense level as 36 and his criminal history category as VI. In arriving at Massey's criminal history category, the presentence report added two "recency points" pursuant to U.S.S.G. § 4A1.1(e), due to the fact that Massey's offense occurred less than two years after his release from confinement on a counted sentence. The applicable Guidelines range was 324 to 405 months' imprisonment. The presentence report noted the plea agreement's provision that the government would "make a good faith evaluation of Mr. Massey's cooperation in determining whether to file a motion for reduction of sentence," whether as a 5K1.1 motion or a Rule 35 motion. Before the sentencing hearing, Massey filed a sentencing memorandum with the district court, requesting that the court consider the substantial assistance he had provided the government. Massey's memorandum stated that he expected the government to file a 5K1.1 motion for a departure from the guidelines and added that he had cooperated "with the hope that the government will move for a release of the mandatory minimum and sentence him to no more than 15 years in prison."

On March 1, 2010, the district court conducted Massey's sentencing hearing. During its allocution, the government reported to the court that while Massey had

cooperated, the government was not filing a 5K1.1 motion presently but anticipated filing a Rule 35 motion "at some time in the future." (Sentencing Hr'g Tr. 5:18-6:4, Mar. 1, 2010) At the outset of his allocution, counsel for Massey added that since the filing of the sentencing memorandum, Massey had testified before the grand jury. Counsel went on to explain that "[t]here is [sic] some timing issues there, and I don't believe that the committee met in sufficient time to allow [the Assistant United States Attorney] to file a motion for substantial assistance, but he does anticipate filing a Rule 35." (Sentencing Hr'g Tr. 6:7-13) Nevertheless, counsel for Massey requested that the district court "consider departing from the guidelines, or actually using the advisory guidelines only as a guide" in recognition of the fact that Massey had "tried to make amends by his cooperation." (Sentencing Hr'g Tr. 8:9-12)

During the hearing Massey himself also had the opportunity to address the district court. In the course of his remarks, Massey affirmed that he had worked with the government and that he intended to continue providing assistance. (Sentencing Hr'g Tr. 11:14-17) When the district court asked Massey what led him to cooperate with the government (Sentencing Hr'g Tr. 19:17-18), Massey responded that he testified before the grand jury because he made a commitment to be released from his incarceration by the time his one-year old son completed high school. (Sentencing Hr'g Tr. 22:9-16) To that end Massey requested that the district court impose a sentence of fifteen years. (Sentencing Hr'g Tr. 23:1-6) The court clarified to Massey that the mandatory minimum sentence for his offense was twenty years and that the court could not depart below the minimum without a motion from the government. (Sentencing Hr'g Tr. 23:17-24:1)

The parties having agreed to the presentence report's Guidelines calculation, the district court sentenced Massey to 324 months' confinement, ten years of supervised release, restitution in the total amount of $51,640.37, and a special assessment of $100. The district court set out the reasons for the sentence it had decided to impose, stating that it "fully recognized" its discretion in arriving at an appropriate sentence. (Sentencing Hr'g Tr. 25:5-11) The court explained that it had "considered all of the arguments in support of the defendant's request for a lower sentence" and "thoroughly

read the defendant's sentencing memorandum, its attachments and the request for a variance from the advisory guideline range, which is included in the motion." (Sentencing Hr'g Tr. 25:12-26:3)  During its analysis, the district court called attention to Massey's cooperation with the government.  The court then stated, "[t]here is no 5K motion before me today, so therefore, as far as a departure from the sentencing guidelines, I do not have that authority from the government" and added that it could not consider the possibility of a future Rule 35 motion in arriving at the sentence. (Sentencing Hr'g Tr. 31:5-9)  After reviewing "the other aspects of the defendant's motion for a variance," the court denied the request.  (Sentencing Hr'g Tr. 31:21-23) Just before pronouncing its sentence, the district court stated, "I look forward if there is a Rule 35 motion, I look forward to receiving it.  And certainly at that point, I can't give it any consideration now, but certainly at that point, the Court will give every consideration to Mr. Massey's cooperation with the government."  (Sentencing Hr'g Tr. 32:6-12)  Massey now appeals the judgment, arguing that the district court's sentence was procedurally and substantively unreasonable.

## II.   ANALYSIS

### A.     Standard of Review

As a general matter, we review sentences for an abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007); *United States v. Blue*, 557 F. 3d 682, 684 (6th Cir. 2009).  The trial court abuses its discretion if it imposes a sentence that is procedurally or substantively unreasonable.  *United States v. Rosenbaum*, 585 F.3d 259, 266 (6th Cir. 2009) (citing *Gall*, 128 S. Ct. at 597).  With respect to the procedural reasonableness of the sentence, the court is limited to plain error review if the trial court invited the defendant's objections to the sentence pursuant to *United States v. Bostic*, 371 F.3d 865, 871-72 (6th Cir. 2004), and defendant failed to raise the issue at that time.  *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011) (quoting *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008)).  Examples of procedural errors include the district court's "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines range as mandatory, failing to

consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence– including an explanation for any deviation from the Guidelines range." *Blue*, 557 F.3d at 684 (quoting *Gall*, 552 U.S. at 51, 128 S. Ct. 586). Under the plain error standard of review, the defendant must show (1) there is error; (2) the error was "clear or obvious rather than subject to reasonable dispute"; (3) it affected the defendant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) it seriously affected the fairness, integrity or public reputation of judicial proceedings. *United States v. Marcus,* 130 S. Ct. 2159, 2164, 176 L. Ed. 2d 1012 (2010) (citations omitted). *See also United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (quotation marks omitted)).

With respect to the substantive reasonableness of the sentence, a sentence is unreasonable "if it is selected arbitrarily, if it is based on impermissible factors, if it fails to consider a relevant sentencing factor, or if it gives an unreasonable amount of weight to any pertinent factor." *Rosenbaum*, 585 F.3d at 267 (citing *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). A sentence within a correctly calculated Guidelines range is entitled to a presumption of reasonableness. *Id.* (citing *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006)). Unlike objections to the procedural reasonableness of a sentence, the defendant need not object to the substantive reasonableness of a sentence in the district court in order to preserve the issue for appeal. *Vonner*, 516 F.3d at 389, 391-92.

**B.      Procedural Reasonableness**

Based on the fact that Massey did not raise his argument before the district court, the procedural reasonableness of Massey's sentence is reviewed for plain error. At no time during the sentencing hearing did Massey argue that the district court had misunderstood its authority to grant a variance for Massey's cooperation, with or without a 5K1.1 motion. The record shows that when the court posed its *Bostic* question and asked whether counsel was satisfied that the court had addressed all of his arguments, Massey's trial counsel had no objection. (Sentencing Hr'g Tr. 34:19-21) Likewise, at

the conclusion of the hearing, the district court asked counsel if there was anything further, to which Massey's attorney answered "[n]o, thank you, your honor." (Sentencing Hr'g Tr. 35:23-36:2) Therefore, the district court's failure to grant Massey's request for a variance is subject to plain error review.

Massey asserts that this court has not applied plain error review to claims that a district court misunderstood the scope of its authority. In support, Massey cites *United States v. Herrera-Zuniga*, 571 F.3d 568 (6th Cir. 2009), a case in which this court declined to apply "*Vonner*'s forfeiture rule" to the defendant's claim that the district court lacked "the authority to categorically reject the base offense level prescribed under the Guidelines" even though the defendant had not raised the issue before the district court. 571 F.3d at 579-80. This court emphasized that there was a lack of clear guidance about whether the specific claim went to the procedural or substantive reasonableness of a sentence. *Id.* The defendant in *Herrera-Zuniga* argued that the issue was substantive and not procedural and cited case law in support of his contention. *Id.* This court observed that in light of the "lingering confusion" created by the case law on the particular question, plain error review would be "inappropriate and patently unfair." *Id.* at 580.

We find that Massey's reliance on *Herrera-Zuniga* is misplaced. As an initial matter, Massey has misstated the holding of *Herrera-Zuniga*. This court did not create a per se rule against plain error review where the defendant objects that the district court misunderstood its authority. On the contrary, the holding of *Herrera-Zuniga* arguably is limited to the facts of that case and the legal issue presented in that appeal, namely whether a district court possessed "the authority to categorically reject the base offense level prescribed under the Guidelines." Furthermore, *Herrera-Zuniga* is distinguishable. Unlike the defendant in *Herrera-Zuniga*, Massey has not asserted that this specific assignment of error goes to the substantive unreasonableness of his sentence, let alone cited case law which would support such a position. Rather, his straightforward contention on appeal is that the district court's misunderstanding of its discretion goes to the procedural reasonableness of his sentence. Because Massey has conceded that this

is a matter of procedural reasonableness and otherwise cited no case law to demonstrate "lingering confusion" on the issue, this case is on all fours with the *Vonner* forfeiture rule, and *Herrera-Zuniga*'s concerns about the patent unfairness of forfeiture are not implicated. Therefore, we review the procedural reasonableness of the district court's sentence for plain error.

Applying the plain error standard of review, Massey's assignment of error about the procedural reasonableness of his sentence is without merit. Massey does not assert that the district court failed to calculate (or improperly calculated) the Guidelines range, treated the Guidelines range as mandatory, failed to consider the § 3553(a) factors, selected a sentence based on clearly erroneous facts, or failed to adequately explain the chosen sentence. Massey argues that the district court ignored Massey's request for a variance in consideration of his cooperation and assistance simply because the government had not filed a 5K1.1 motion. This court has recently re-affirmed that "[a]lthough *departures* under § 5K1.1 require a motion from the government, *variances* do not." *United States v. Gapinski*, 422 F. App'x 513, 518 (6th Cir. 2011) (emphasis in original) (citing *Blue,* 557 F.3d at 687). A district court retains the discretion to take into account a defendant's cooperation as a § 3553(a) mitigating factor. *United States v. Petrus*, 588 F.3d 347, 356 (6th Cir. 2009) (citing *Blue*, 557 F.3d at 686). The question presented is whether the district court misunderstood its discretion in Massey's case. Based on the record of the proceedings below, we find that the district court did not err.

As a general matter, the district court stated on the record that it "fully recognized" its discretion in imposing the sentence and took into account all of Massey's arguments in favor of a lower sentence, including his request for a variance. (Sentencing Hr'g Tr. 25:5-11) The transcript shows that the district court specifically asked Massey why he had decided to cooperate with the government. In setting out the reasons in support of a variance, the district court again addressed Massey's assistance stating "[Massey] also, I think, made a very positive decision for himself in deciding to cooperate with the government. Perhaps this is the first decision he has made for himself in a long time that is a positive one for himself." (Sentencing Hr'g Tr. 30:25-31:4)

After mentioning Massey's cooperation, the court went on to consider the rest of the factors Massey had raised in support of his request for a variance, factors including Massey's age, the strong showing of family support Massey received, and Massey's "chaotic" childhood. (Sentencing Hr'g Tr. 31:24-32:5)  It would be odd indeed for the district court to inquire about Massey's cooperation and then refer to it again in its analysis of Massey's request for a variance, had the court, in fact, mistakenly believed that it could not consider the cooperation without a motion from the government.  In the final analysis, the district court held that it was not persuaded "that a variance from the guidelines is appropriate."  (Sentencing Hr'g Tr. 31:21-23)  Based on this record, we conclude that the district court did not misunderstand its discretion to consider Massey's cooperation as a factor to justify a variance from the Guidelines.

On appeal Massey calls attention to the district court's references to a 5K1.1 motion or Rule 35 motion as evidence that the court wrongly assumed that it could not consider Massey's cooperation in the absence of one of these motions.[1]  In context, however, it is clear that the discussion of these motions took place for the simple fact that Massey had anticipated a 5K1.1 motion from the government that could have potentially resulted in a departure below the mandatory minimum sentence of twenty years.  Massey's sentencing memorandum had reported to the Court that a Rule 5K1.1 motion was going to be filed at the time of sentencing.  Based in part on that expectation, Massey's memorandum moved the district court to impose a sentence of fifteen years.  At the outset of the sentencing hearing, it was both attorneys, and not the district court, who raised the issue of the 5K1.1 motion and a yet-to-be filed Rule 35 motion.[2]  The

---

[1] U.S.S.G. § 5K1.1 states, "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." Likewise, Federal Rule of Criminal Procedure 35(b) provides, "Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person."

[2] Based on the fact that the district court did not interject the possibility of the Rule 35 motion into the sentencing, this is not a situation of the kind where this court has previously cautioned district courts about discussing a possible Rule 35 motion at sentencing, though it may bear repeating that this court "encourage[s] an appropriate level of care when discussing Rule 35, if at all, at sentencing." *Rosenbaum*, 585 F.3d at 266.  More importantly, Massey has not suggested that his sentence was longer than it otherwise would have been because the trial court was anticipating an opportunity to reduce the sentence in the future. *See United States v. Judge*, 649 F.3d 453, 460-61 (6th Cir. 2011) (citing *United States v.*

government indicated that while it had not filed the 5K1.1 motion, it did intend to file a Rule 35 post-sentencing motion. Counsel for Massey, presumably because he had represented to the court in his sentencing memorandum that the court could expect a 5K1.1 motion, explained that the 5K1.1 motion was not filed due to "some timing issues" on the government's part. Despite the fact that the court was not presented with a 5K1.1 motion or a motion pursuant to 18 U.S.C. § 3553(e), both Massey and his attorney nevertheless requested at sentencing that the court consider a departure from the Guidelines and sentence Massey to fifteen years.[3] At one point during the hearing, the district court asked Massey, "You understand that I can't give you 15 years, Mr. Massey?" to which Massey responded that he did not understand. (Sentencing Hr'g Tr. 23:7-9) The district court then correctly explained to Massey that it could not grant a departure below the mandatory minimum without a motion from the government.[4]

A court may not depart below the statutory minimum unless the government moves for a departure under either 18 U.S.C. §§ 3553(e) or 3553(f). *United States v. McIntosh*, 484 F.3d 832, 835 (6th Cir. 2007) (citing *Melendez v. United States,* 518 U.S. 120, 125-26, 116 S. Ct. 2057, 135 L. Ed. 2d 427 (1996).[5] This court has further concluded that a district court lacks any discretion under § 3553(a) to impose a sentence below the statutory minimum. *United States v. Cecil*, 615 F.3d 678, 695 (6th Cir. 2010).

---

*Ridge*, 329 F.3d 535, 543 (6th Cir. 2009); *United States v. Recla*, 560 F.3d 539, 545 (6th Cir. 2009)).

[3]Title 18 U.S.C. § 3553(e) provides in relevant part

> Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

[4]Notably the district court never stated that a 5K1.1 motion would allow the court to depart below the mandatory minimum. This court has held that §§ 3553(e) and (f) are "the exclusive means by which a district court may depart below a statutory minimum." *United States v. Stewart*, 306 F.3d 295, 331 n. 21 (6th Cir. 2002). Conversely, the Supreme Court has held that "a departure motion made specifically under § 5K1.1 does not authorize a departure below the statutory minimum" unless the government somehow "indicate[s] its desire or consent that the court depart below the statutory minimum . . . ." *McIntosh*, 484 F.3d at 835 (quoting *Melendez*, 518 U.S. at 126 n.5).

[5]Section 3553(f), also known as the "safety valve" provision, applies if a defendant has only one criminal history point. 18 U.S.C. § 3553(f)(1); *McIntosh*, 484 F.3d at 835. In light of his six criminal history points, Massey would not qualify for relief under this section.

Later in the hearing, as it set forth its analysis of the sentencing factors, the district court mentioned Massey's cooperation and reiterated that for purposes of the present sentencing, it could not grant a departure without a motion from the government and that it could not take into consideration the potential of a Rule 35 motion that might be filed in the future.[6] The district court correctly stated the law. A district court may grant a departure from the sentencing guidelines pursuant to 5K1.1 only upon motion from the government. *McIntosh*, 484 F.3d at 835. Furthermore, "the prospect of Rule 35(b) relief in the future cannot be allowed to alter or influence the deliberations of the court at sentencing." *Rosenbaum*, 585 F.3d at 264 (quoting *United States v. Ridge*, 329 F.3d 535, 542-43 (6th Cir. 2009)) (ellipsis omitted). Massey has failed to demonstrate plain error. Therefore, we hold that Massey's sentence was procedurally reasonable.

## C.     Substantive Reasonableness

In order to determine whether Massey's sentence is substantively reasonable, we must consider "whether the length of the sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing" in light of the § 3553(a) factors. *Recla*, 560 F.3d at 549 (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)). Massey's sentence was within the Guidelines and is therefore presumptively reasonable. A defendant who challenges a within-Guidelines sentence bears "no small burden." *United States v. Simmons*, 587 F.3d 348, 365 (6th Cir. 2009). Massey has not argued that his sentence was selected arbitrarily, was based on impermissible factors, failed to consider a relevant sentencing factor, or gave an

---

[6]We note that the district judge mentioned a possible Rule 35 motion one final time just after it denied the request for a variance. There the court remarked, "I look forward if there is a Rule 35 motion, I look forward to receiving it. And certainly at that point, I can't give *it* any consideration now, but certainly at that point, the Court will give every consideration to Mr. Massey's cooperation with the government." (emphasis added) (Sentencing Hr'g Tr. 32:6-12) When the district court stated, "I can't give it any consideration now," the statement could be read to mean one of two things: that until the government filed a Rule 35 motion, the district court could not presently consider the motion; or that until the government filed a Rule 35 motion, the district court could not presently consider Massey's cooperation. The former is a reiteration of what the court had already stated on the record and a correct statement of the law; the latter would be error for the reasons already explained. Whatever ambiguity there might be in this single remark, the better interpretation in the overall context of the sentencing hearing is that the district court was referring to the fact that it could not presently consider the Rule 35 motion until it was filed. Even if we found the remark to be ambiguous, any error arising from the ambiguity is not plain in that it is "subject to reasonable dispute" and not "clear or obvious." *Marcus*, 130 S. Ct. at 2164. Therefore, this statement does not support Massey's argument on appeal.

unreasonable amount of weight to any pertinent factor. The district court emphasized Massey's criminal history, the need to deter Massey and others from future drug offenses, the need to protect the public, and above all the gravity of Massey's offense, including the fact that Massey was the leader of a conspiracy that produced a large quantity of methamphetamine and was responsible for two fires within twenty-four hours.

Massey's only argument on appeal is that the district court's sentence is excessive and is "not compatible with the purpose of Section 3553(a) 'to provide just punishment for the offense.'" More specifically, Massey argues that the district court added two points to his criminal history score under U.S.S.G. § 4A1.1(e) because Massey committed his offense less than two years following release from confinement on a counted sentence, so-called "recency points." Massey does not argue that the calculation was incorrect. Rather, Massey argues that the United States Sentencing Commission decided in 2010 to recommend that Congress eliminate the "recency points" provision of the Guidelines. According to Massey, the Commission concluded that recency points have "a minimal predictive power" of future criminal behavior in the case of offenders who received an increase in their criminal history category. In this case, Massey argues that, before the inclusion of his recency points, his criminal history category would have been V, resulting in a Guidelines range of 292 to 365 months, instead of the range of 324 to 405 months based on his criminal history category of VI.

Congress amended U.S.S.G. § 4A1.1(e) effective November 1, 2010, to remove recency points from the calculation of a defendant's criminal history category. *See* U.S. SENTENCING GUIDELINES § 4A1.1(e) (2010), Historical Notes 2010 Amendments. The Historical Notes state that "the Commission undertook analyses to determine the extent to which recency points contribute to the ability of the criminal history score to predict the defendant's risk of recidivism" and determined that "consideration of recency only minimally improves the predictive ability." *Id.* Massey has not argued that the amended § 4A1.1(e) should be applied retroactively or that the district court should have applied it prospectively. Massey simply argues that the application of this Guideline results in

a sentence greater than necessary to "provide just punishment for the offense." A sentence is not erroneous when it is properly imposed based on the Guidelines in effect at the time of sentencing. *United States v. Ursery*, 109 F.3d 1129, 1137 (6th Cir. 1997); 18 U.S.C. § 3553(a)(4)(A) ("The court, in determining the particular sentence to be imposed, shall consider the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that . . . are in effect on the date the defendant is sentenced."). For this reason alone, we hold that Massey's sentence was substantively reasonable.

Moreover, Massey never argued before the district court that the court should exercise its discretion and disregard U.S.S.G. § 4A1.1(e) as a matter of policy. A district court has the ability to vary a sentence based on its policy disagreement with a Guideline. *United States v. Davy*, 433 F. App'x 343, 349 (6th Cir. 2011) (citing *United States v. Brooks*, 628 F.3d 791, 799–800 (6th Cir. 2011). However, "the fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *Brooks*, 628 F.3d at 800) (citations omitted). We have never required a district court to independently assess the empirical support for a specific Guideline, "to delve into the history" of the Guideline, or otherwise satisfy itself that the Guideline is proper. *Id.* (quoting *United States v. Aguilar-Huerta*, 576 F.3d 365, 367-68 (7th Cir. 2009)). In light of the foregoing, we conclude that the district court did not abuse its discretion in applying recency points to Massey's criminal history category. Therefore, Massey's sentence was substantively reasonable.

## III.   CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.